NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GARY S. SERIO, *et al.*, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | **OPINION** |
| v. | : | Civil Action No. 06-cv-4681 (DMC) |
| WACHOVIA SECURITIES, LLC, | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Wachovia Securities, LLC ("Wachovia") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for partial summary judgment pursuant to Rule 56(b) and by Plaintiffs Gary S. Serio, *et al.* for leave to file an amended class action complaint pursuant to Rule 15. Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion to dismiss is **denied** as to Count I (Recovery of ERISA Benefits) and Count II (Breach of Fiduciary Duty pursuant to ERISA) and is **granted** as to Count III (Breach of Fiduciary Duty pursuant to New York law), Count IV (Unjust Enrichment), Count V (Conversion) and Count VI (Violation of New York Labor Law). Additionally, this Court **grants** Plaintiffs leave to amend the Class Action Complaint to add a counts for actual discharge and constructive discharge and **denies** Plaintiffs leave to amend the Class Action Complaint to add a claim for tortious interference and to add allegations in support of Plaintiffs' unjust enrichment and conversion claims.

## I.   BACKGROUND

### A.   Procedural Background

This putative class action was initiated on September 29, 2006 by Plaintiffs, a group of former Wachovia financial advisors, (1) to obtain wages that they allegedly contributed to various retirement plans and; (2) to obtain the earned wages contributed to the plans by the Class they seek to represent.  Plaintiffs seek this relief pursuant to ERISA, New York common law and New York Labor Law.  Plaintiffs' First Amended Class Action Complaint contains the following Counts: Recovery of ERISA Benefits (Count I); Breach of Fiduciary Duty pursuant to ERISA (Count II); Breach of Fiduciary Duty pursuant to New York law (Count III); Unjust Enrichment (Count IV); Conversion (Count V); and Violation of New York Labor Law (Count VI).  Additionally, Plaintiffs' proposed amended complaints seeks to add the following Counts: Constructive Discharge by Wachovia Securities (Proposed Count IV); Actual Discharge by Prudential or Non-Termination (Proposed Count V); Unjust Enrichment (Proposed Count VI); Tortious Interference with Plaintiffs' Rights Under the MasterShare Plan (Proposed Count VII).

### B.   Factual Background

Plaintiffs were originally employed by Prudential.  While employed by Prudential, Plaintiffs participated in and contributed to Prudential's MasterShare Plan.  The Plan, introduced in 1999, was allegedly marketed and sold as a method of saving money for retirement.

According to Plaintiffs' First Amended Class Action Complaint, the MasterShare Plan was a deferred compensation program that gave Prudential employees the opportunity to invest pre-tax earnings through payroll deductions in shares of the Prudential Stock Index Fund at a 25% discount of the purchase price of Prudential securities.  The shares were deposited into a customer account

established for the participant, vesting three years after purchase. Prudential also offered Enhanced

Premium Shares in the Fund, which were contributions made by Prudential that took into account

the employee's and the company's performance. The Enhanced Premium Shares vested at the rate

of 20% per year beginning four years after purchase. The shares were not transferable and were

subject to forfeiture for a period of three years from the purchase date of the shares. Additionally,

any participant who voluntarily terminated his or her employment with Prudential or was terminated

for cause during this period would forfeit his or her shares and/or the value of the participant's

MasterShare Plan account.

Defendant Wachovia Securities was formed pursuant to an agreement between Wachovia

Corp. and Prudential Financial Inc., dated February 19, 2003 (the "Formation Agreement").

Specifically, the Formation Agreement provided for the transfer of Prudential's retail brokerage

business and other associated assets to Wachovia/Prudential Financial Advisors LLC ("WPFA").

The Formation Agreement stated that all Prudential employees working for Prudential's brokerage

division, including Plaintiffs, became employees of Wachovia Securities as of June 30, 2003.

Additionally, in conjunction with the Formation Agreement, the MasterShare Plan was amended in

2003, providing that "all references in the MasterShare Programs to PSI or to Prudential Securities

Incorporated are hereby deemed references to [WPFA]." (Supplemental Declaration of Angela

Waldrop ("Waldrop Supp. Decl."), Ex. A, ¶1.)

In 2004, Wachovia Securities replaced the MasterShare Plan with the Wachovia Securities

2005 Transitional Deferred Compensation Plans ("Wachovia Plans[1]"). According to the First

---

[1]Wachovia Securities offered the Deferral Election Plan to legacy Prudential financial advisors if they earned $200,000 or more in the period from October 1, 2002 through September 20, 2003. Legacy Prudential financial advisors that earned less than $200,000 in the same period were given the opportunity to participate in the Voluntary Deferral Plan.

Amended Class Action Complaint, the Wachovia Plans were designed as a temporary plan in effect for 2004 only.  During their employment with Wachovia Securities, Plaintiffs allegedly contributed portions of their wages to the Wachovia Plans.

Plaintiffs allege that they were constructively terminated by Wachovia Securities due to the deplorable and "impossible" working conditions there.  The bulk of Plaintiffs' allegations regarding the "intolerable workplace" environment at Wachovia Securities concern inadequate and faulty technology that caused delays and distress to Plaintiffs' clients.  Additionally, Plaintiffs complain of a disturbing pattern of corporate conduct.  Due to these working conditions, Plaintiffs claim that they were unable to provide their clients with the premier financial services that they were accustomed to and to which they were entitled.

After their alleged constructive termination, Plaintiffs' attempts to receive payment of their wage contributions and to obtain relief through administrative remedies were allegedly futile.  Accordingly, Plaintiffs filed the instant action to recover their wage contributions made pursuant to the MasterShare Plan and the Wachovia Plan.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6) Dismissal

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be

granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Additionally, the Supreme Court recently clarified the Rule 12(b)(6) standard in Bell Atlantic Corporation v. Twombly.  127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### B.    Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid.

Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   COUNTS ONE AND TWO

### A.   ERISA Definition of Pension Plan

In order for Plaintiffs' to prevail on their ERISA claims - Counts One and Two - the MasterShare and Wachovia plans must qualify for the protections provided by ERISA. In other words, the deferred income plans at issue must satisfy the ERISA definition for pension plan. ERISA defines a pension plan as

> any plan, fund or program . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program . . . (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A).

Plaintiffs offer two arguments in support of their position that ERISA applies to the Plans. First, Plaintiffs contend that ERISA applies to the MasterShare Plan because it provides income for retirement and/or defers income beyond the period of covered employment. Second, Plaintiffs claim that circumstances surrounding the offering of the MasterShare and Wachovia Plans support the position that the Plans are pension plans, as defined by ERISA. Specifically, Plaintiffs argue strenuously that the MasterShare Plan was represented to employees as a plan intended to provide

retirement benefits.

       1.     Express Language of Plans

As set forth above, ERISA provides two alternative definitions of "pension plan": (1) a plan that provides retirement income to employees; or (2) a plan that results in deferral of income by employees for periods extending to the termination of covered employment or beyond. See 29 U.S.C. § 1002(2)(A). Additionally Department of Labor ("DOL") regulations which "clarif[y] the limits of the defined terms 'employee pension benefit plan' and 'pension plan for purposes of Title I [of ERISA]" exclude most bonus programs from the definition of pension plan. See 29 C.F.R. § 2510.3-2(a) and (c) (2005) (providing that "employee pension benefit plan" and "pension plan" does not include bonus payments, except where bonuses are systematically deferred to provide retirement income). Further, courts interpreting the Section 1002(2)(A) definition of pension plan have determined that the critical factor in determining whether a deferred compensation plan is an ERISA pension plan is whether the plan allows payments to be made to employees during active employment.[2] In determining whether a stock option plan was an ERISA pension plan, the Third Circuit employed this same criteria. See Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 189 (3d Cir. 2003) (citing Murphy, 611 F.2d at 575-76) (finding that stock option plan was not an ERISA pension

---

[2] Defendant cites the following cases in support of this proposition: Murphy v. Inexco Oil Co., 611 F.2d 570, 575-76 (5th Cir. 1980); Mullett v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., No. 01-2118, 2002 WL 32298599, at *4 (E.D. Pa. Feb. 26, 2002); Albers v. Guardian Life Ins. Co. of Am., No. 98-6244, 1999 WL 228367, at *3 (S.D.N.Y. Apr. 19, 1999); Patrick v. Reading Alloys, Inc., 98-4107, 1998 WL 966068, at *1 (E.D. Pa. Nov. 17, 1998); Kaelin v. Tenneco, Inc., 28 F. Supp. 2d 478, 487 (N.D. Ill. 1998); Int'l Paper Co. v. Suwyn, 978 F. Supp. 506, 511 (S.D.N.Y. 1997); Foster v. Bell Atl. Tricon Leasing Corp., No. 93-4527, 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994); Hagel v. United Land Co., 759 F. Supp. 1199, 1202 (E.D. Va. 1991).

plan because the employer's "post-retirement payments were only incidental to the goal of providing current compensation.)  See also Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 931-32 (8th Cir. 1999) (holding that a phantom stock plan was not an ERISA pension plan where there was a possibility of payment after termination of employment); Killian v. McCulloch, 850 F. Supp. 1239, 1247 (E.D. Pa. 1994) (holding that a deferred compensation plan was not an ERISA pension plan because there was a possibility that benefits could be paid after termination; McKinsey v. Sentry Ins., 986 F.2d 401, 406 (10th Cir. 1993) (holding that plan was not an ERISA pension plan because employees could withdraw allocations at any time during the course of his/her employment).

In this case, the MasterShare Plan and the Voluntary Deferral Plan both provided for deferred compensation.  However, after the fixed deferred period, the balances and Shares were immediately paid to the plan participants.  This payment occurred regardless of whether the participant was currently employed or had retired.  Thus, similar to the above cases - Oatway, Emmenegger, Killian and McKinsey - payment after retirement was only incidental to the plan.  Further, payment during employment was a strong possibility for many Participants.  Accordingly, the Plans at issue in this case bear the key defining characteristic of deferred compensation plans - they allow for payments to be made to employees during active employment.  On this basis, it appears that the Plans are not pension plans covered by ERISA.

Plaintiffs also contend that the Plans fall within the second ERISA definition for pension plan: a plan that results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.  Noting that the Enhanced Premium Shares become vested four years after purchase and do not become fully vested until eight years after their purchase, Plaintiffs

-8-

contend that there is the possibility for the shares to be deferred for "periods extending to the termination of covered employment or beyond."  This argument is merely hypothetical and is contrary to the decisions of several circuit courts, including the Third Circuit.  While the Plans may have enabled participants to defer income to the termination of covered employment and beyond, the plans also allowed participants to receive payments during their employment.  Thus, any deferred compensation paid after a plan participant retired was not designed to be a retirement benefit but was merely "incidental" to the goal of providing current compensation.  See Oatway,. 325 F.3d at 189.

As noted by the parties, other district and state courts that have considered the MasterShare Plan have reached differing conclusions as to whether or not the plan constitutes an ERISA "pension plan."  In Marsh v. Prudential Securities, United States District Court Judge Katherine S. Hayden concluded that the MasterShare Plan was not an ERISA pension plan because it did not systematically defer payments until after termination or retirement.  No. 01-4940 (KSH) (D.N.J. May 2, 2002) (Warren Decl. Ex C.)  In contrast, the Northern District of Illinois denied a motion to dismiss ERISA challenges to the forfeiture of MasterShare benefits, based on its conclusion that the MasterShare Plan was not a "bonus plan" pursuant to 29 CFR § 2510.3-2(c).  Holzer v. Prudential Equity Group, LLC, 458 F. Supp. 2d 587, 591 (N.D. Ill. 2006).  See also Holansky v. Prudential Fin., No. 02-4820, 2004 WL 1404016 (N..D. Ill. June. 21, 2004) (denying motion to dismiss, finding that it was "possible that the Plan is governed by ERISA" if employees regularly utilized it as a retirement plan). Notably, all of these decisions related to the original MasterShare Plan, not the

amended MasterShare Plan at issue here.[3]  Additionally, all of these cases are not binding on this

Court and are merely persuasive authority.

2.     "Surrounding Circumstances" Test

In addition to the plain language of the Plans, the Court must also consider the surrounding

circumstances and, in particular, the purpose of the Plans.  Whether an ERISA plan exists "is a

question of fact to be answered in light of all the surrounding circumstances from the point of view

of a reasonable person."  Minnis v. Baldwin Bros. Inc., 150 Fed. Appx. 118, 120 (3d Cir. 2005)

(quoting  Deibler v. United Foods & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d

Cir. 1992);  Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990)).

Specifically, some courts have held that among the surrounding circumstances to be considered is

whether the company represented to employees that the plan was intended to provide retirement

benefits.  See Darden Nationwide Mut. Ins. Co., 922 F.2d 203, 207-08 (4th Cir.1991); Holzer, 458

F. Supp. 2d 587; Holansky, 2004 WL 1404016.

The parties dispute whether the promotion of a plan can render a plan a pension plan, even

if the express terms of the plan itself would not qualify it as such.  Plaintiffs rely heavily on two DOL

Opinion Letters.  See Dep't of Labor Adv. Op. 98-02A, 1998 ERISA LEXIS 5 (Mar. 6, 1998); Dep't

of Labor Adv. Op. 84-12A, 1984 WL 23427 (Feb. 23, 1984); Dep't of Labor Adv. Op. ERISA Op

Letter No. 81-74A, 1981 WL 17797 (Sept. 29, 1981).  Contrary to Plaintiffs' argument, the import

---

[3]As discussed in relation to Plaintiffs' Motion to Amend the Complaint, Plaintiffs dispute whether the Plan was properly amended.  However, as discussed below, Plaintiffs' argument that the 2003 Amendment was ineffective is unpersuasive.  Accordingly, it is the finding of the Court that the MasterShare Plan was effectively amended in 2003.

of these advisory opinions is not that the promotion of a plan can override the plain language of a plan. Rather, these opinions indicate that plans *can* result in the systematic deferral of income after retirement even though the plan is not, by its express terms, an employee pension plan.  Further, 29 U.S.C. § 1002(2)(A) provides that a defining feature of a pension plan is whether the plan results in deferral of income beyond retirement - *not* whether the plan was promoted as a retirement plan.  This Court is unpersuaded that the promotion of a Plan alone can effectively nullify the express terms of a plan.  Instead, it is the finding of this Court that the primary consideration for the "surrounding circumstances" test is whether the plan resulted in systematic deferral of payment into the post-employment period.  See Hahn v. Nat'l Bank, N.A., 99 F. Supp. 2d 275, 280-81 (E.D.N.Y. 2000) (rejecting "surrounding circumstances" argument where there were no facts alleged to support finding that "payments are systematically deferred to the post-employment period").  Accordingly, with regard to the "surrounding circumstances" test, this Court must consider the purpose of the Plans, the promotion of the Plans and whether or not they systematically resulted in deferral of income after retirement.

        In considering the "surrounding circumstances" of the Plans, this Court will first consider the purpose of the Plans.  Several courts have considered the plan's purpose in determining whether a plan qualifies as an ERISA "pension plan."  See Emmenegger, 197 F.3d at 931; Killian, 850 F. Supp. at 1244.  Further, it is possible for a court to infer the purpose of a plan from its design and structure.  Prieto v. Election.com, No. 04-4413, 2005 WL 3560596, at *4 (E.D.N.Y. Dec. 29, 2005); Roderick v. Mazzetti & Assocs., Inc., No. 04-2436, 2004 WL 2554453, at *8 (N.D. Cal. Nov. 9, 2004).  In this case, the Plans allow employees to invest pre-tax income in a stock index fund and

condition benefit distributions on employees continuing work with their employer for three years after Shares are purchased on their behalf. Effectively, the Plan's deferral payment schedule creates incentives for participants to continue employment. In fact, the New York Court of Appeals has characterized the MasterShare Plan as a form of "golden handcuffs . . . designed to provide an investment vehicle with tax-deferral benefits to its employees and concomitantly encourage employee longevity." Marsh v. Prudential Secs., Inc., 1 N.Y.3d 146, 154 (2003). Thus, it is fair to infer that the three-year period of deferral was not designed to provide retirement benefits; rather, it provided incentive to encourage employees to continue working for Prudential for a minimum of three years.

Second, regarding "surrounding circumstances" this Court will consider whether or not the Plans were promoted as retirement plans. Plaintiffs claim that the Plans were promoted as retirement plans because they were advertised (1) with the phrase "take charge of your future"; and (2) as superior to the ordinary 401(k) offered by Prudential. Plaintiffs rely on cases from the Northern District of Illinois where the Holzer and Holansky courts denied Prudential's motions to dismiss, finding that it is *possible* that the MasterShare Plan is governed by ERISA "if, for example PSI promoted the MasterShare Plan as a retirement Plan, its employees regularly utilized it as a retirement Plan, and the three year period was meaningless because it was routine to simply grant one year extensions until retirement." Holansky, 2004 WL 1404016 at *2. Thus, the question for this Court is whether Plaintiffs have alleged sufficient facts to support a claim that the Plans fall within the definition of ERISA "pension plan" such that Plaintiffs may survive Defendant's Rule 12(b)(6) motion to dismiss. To support Plaintiffs' claim that the "surrounding circumstances" of the

Plan indicate that it was a retirement plan, Plaintiffs allege that

> The MasterShare Plan was promoted by Prudential to Plaintiffs and other eligible employees, through brochures, memoranda, presentations to employees, and other promotional materials, as a method of saving money for retirement.

Am. Class Action Compl. ¶23.  This allegation is sufficient to raise a question of fact regarding the "surrounding circumstances" of the Plans.  Plaintiffs succeed in citing factual allegations to raise their right to relief "above a speculative level." Twombly, 127 S.Ct at 1965.

Based on the foregoing, it is the finding of this Court that Rule 12(b)(6) dismissal is inappropriate as to Counts I and II because there is a question of fact regarding whether  the Plans constitute ERISA pension plans.  While the plain language of the Plans indicates that they do not qualify as ERISA "pension plans," Plaintiffs set forth sufficient allegations to support their theory that the Plans are ERISA pension plans under a "surrounding circumstances" test.

## IV.   DEFERRAL ELECTION PLAN CLAIMS

Also at issue is the Wachovia Deferral Election Plan and whether or not its participants are entitled to relief pursuant to ERISA or pursuant to state law.  Defendants sets forth separate arguments as to why Plaintiffs are not entitled to retrieve any contributions made to the Deferral Election Plan.  As set forth below, these arguments are meritless.

The Deferral Election Plan was offered to Prudential financial advisors who earned $200,000 or more in the period of October 1, 2002 through September 30, 2003.  Unlike the MasterShare Plan, the Deferral Election Plan measured the amount a participant would receive at the time distributions are made by the amounts deferred by the employee, by the matching amounts contributed by Wachovia and by the performance of investment funds the employee selected as if those employee

and Wachovia contributions had actually been invested in the selected investments.  Based on these differences, Defendant claims, and Plaintiffs do not dispute, that the Deferral Election Plan is an ERISA pension plan.  However, for other reasons discussed below, Defendant contends that Plaintiffs are not entitled to relief under this Plan pursuant to either ERISA or state law.  On this basis, Defendant seeks partial summary judgment as to Plaintiffs' claims relating to the Deferral Election Plan.

First, Defendant argues that Plaintiffs cannot recover their contributions made to the Deferral Election Plan based on a theory of constructive discharge.  Defendant contends that "constructive discharge" is not listed as a circumstance for which a participant is entitled to become vested in his Deferral Election Subaccount.  This Court is unpersuaded that this language forecloses Plaintiffs' right to recover contributions under the Deferral Election Plan.  As Plaintiffs note, under the terms of both the MasterShare Plan and the Wachovia Plan, Plaintiffs are entitled to distribution of their wages in the event they are terminated on a not-for-cause basis.  Accordingly, this Court will not dismiss Plaintiffs' claims on this basis.

Additionally, Defendant argues that the only individual Plaintiffs to make deferral payments under the plan - Plaintiffs Andriole and Napolitano - are not entitled to receive benefits pursuant to ERISA because they did not exhaust the Deferral Election Plan claims procedures. While there is no express or implied requirement pursuant to 29 U.S.C. § 1132 and ERISA § 502 that administrative remedies be exhausted before filing suit, courts have repeatedly required plaintiffs to exhaust administrative remedies prior to seeking judicial relief.  See Henshaw v. Roofers Local No. 4 Pension Fund, No. 04-6106, 2006 WL 2715138 (D.N.J. Sept. 22, 2006).  However, the Third

Circuit has excused a plaintiff's failure to exhaust administrative remedies where it appears certain that such efforts would be futile.  Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990); Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002).  To determine whether administrative remedies would be futile, the Court should consider the following factors: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the benefit Plan administrator to comply with his own internal administrative procedures; and (5) testimony of Plan administrators that any administrative appeal would be futile. Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002).  Clearly this is a very fact-sensitive inquiry.  This Court is satisfied that Plaintiffs raise numerous questions of fact as to whether or not Andriole and Napolitano attempted to obtain administrative relief and whether such relief would have been futile.  Accordingly, this Court is satisfied that summary judgment is inappropriate as to Plaintiffs' state claims under the deferral election plans.

## V.   ACTUAL TERMINATION

In paragraph102 of their proposed amended class action complaint, Plaintiffs content that their "and the other Class members employment with [Prudential] . . . was terminated on a not-for-Cause basis when they ceased being employed by Prudential and became the employees of Wachovia.  Contrary to Plaintiffs' actual termination theory of relief, the Plan Administrator concluded that termination without cause did not occur when Plaintiffs ceased employment with Prudential.  Thus, in order for Plaintiffs to prevail on their actual termination claim, the Court must also conclude that the Plan Administrator's decision constituted an abuse of discretion and is not

final and binding on the parties.

The Third Circuit has instructed that when "reviewing an ERISA plan fiduciary's discretionary determination regarding benefits, a court must take into account the existence of the structural conflict of interest." Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004); see also Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 385 (3d Cir. 2000). Factors relevant to a potential conflict of interest include "the sophistication of the parties, the information accessible to the parties . . . the exact financial arrangement [between the parties]" and whether the claimant is a former or current employee. Kosiba, 384 F.3d at 64-65. In this case, Plaintiffs argue that the Plan Administrator's decision must be subject to strict review because of (1) "Wachovia Securities' direct inherent conflict in deciding whether an employee was involuntarily terminated not-for-cause"; and (2) "Wachovia Securities having no incentive to satisfy the claims of former employees." (Pls. Reply Br. at 3 n.9.)

Defendant's legal analysis regarding the binding effect of the Plan Administrator's decision is sound. However, it appears that this argument raises several questions of fact including, *inter alia*, (1) whether the Plan Administrator was motivated by bad faith, fraud or arbitrary action; (2) any structural conflicts of interest; (3) the sophistication of the parties; (4) the information accessible to the parties; and (5) the financial arrangement between the parties. It is the finding of this Court that several questions of fact exist as to the enforceability of the Plan Administrator's decision. Accordingly, this argument does not establish that Plaintiff's actual termination claim is futile.

A.     **Plaintiffs Were Never Employed by WPFA**

In support of their proposed actual termination or non-termination claim, Plaintiffs argue that

-16-

they were never Employees of WPFA, the "Corporation" under the MasterShare Plan after the June 2003 Amendment was enacted.  Instead, Plaintiffs were employed by WPFA's subsidiary, Wachovia Securities.  On this basis, Plaintiffs argue that as of the Closing Date they were not "Employees" of the "Corporation," as defined by the MasterShare Plan.  Thus, Wachovia was not permitted to forfeit their MasterShare accounts under the terms of the Plan.

In setting forth this argument Plaintiffs emphasize the intricacies of the corporate structure of Wachovia Corp. and its affiliates: Wachovia Securities and WPFA, the "Corporation" under the amended MasterShare Plan, are separate entities.  Wachovia Securities, a subsidiary of WPFA, operated the brokerage business.  Plaintiffs argue that they were not "Employees" of WPFA, the designated "Corporation" under the MasterShare Plan, when they left Wachovia Securities.  As such, Plaintiffs claim, they could not have been terminated by WPFA since they were never "Employees" of WPFA to begin with.  Accordingly, Plaintiffs theorize that their employment with WPFA, the "Corporation," was never terminated and Wachovia Securities was thereby not allowed to forfeit their MasterShare accounts under the Plan.

In response, Defendant notes that MasterShare's termination provision refers to termination by the "Corporation or affiliates,"  (Declaration of Angela Waldrop ("Waldrop Decl.") Ex. B, Art. X(B), 14-15) and, as amended by the June 2003 Amendment, to "[WPFA] or affiliates."  Specifically, the termination provision provides that a Participant's benefits would not be forfeited if his or her employment "is terminated by the Corporation or affiliates on a not-for-Cause basis."  Notably, Plaintiffs' proposed third amended complaint alleges (1) that they were employed by Wachovia Securities; and (2) that Wachovia Securities is an affiliate of WPFA.  Thus, contrary to

-17-

Plaintiffs' argument, it appears that termination by Wachovia, an affiliate of WPFA, falls within the termination provision of the MasterShare Plan.

In the alternative, Plaintiffs' Reply Brief sets forth a more detailed argument as to why they do not fall within the MasterShare definition of "Employee" and thus were not terminated by WPFA or its affiliate.  (Pls. Reply Br. at 2-3.)  The MasterShare Plan defines "Employee" as "anyone employed by *the Corporation, or its affiliates for whom the Corporation functions as paymaster*." Plaintiffs, employees of Wachovia Securities, argue that they did not work for WPFA (the Corporation).  Further, Plaintiffs contend that they did not work for Wachovia Corp., the affiliate entity that acted as paymaster for Wachovia Securities.  Based on this theory, Plaintiffs argue that they were not "Employees" or Participants under the MasterShare Plan after the Closing Date. Accordingly, Plaintiffs argue that they could not have been terminated by WPFA or its affiliate, Wachovia Securities and thus Wachovia Securities was not permitted to forfeit Plaintiffs' accounts.

In response, Defendant argues that Plaintiffs improperly rely on the qualified reference to affiliates in § XXIV(10).  Defendant explains that "affiliates" is used numerous times throughout the MasterShare Plan without qualification and the only time "affiliates" is used with the paymaster qualification is in § XXIV(10).  Defendant argues that this Court should apply the traditional contract construction principle of *expressio unius est exclusion alterius*.  In other words, since a qualified definition of "affiliates" in one section is used only once, the Court should find that the parties intended to exclude the qualified definition from all the earlier and subsequent provisions.  (Def. Sur-Reply Br. at 3, n.3) (citing Frank Briscoe Co., Inc. v. Travelers Indem. Co., 899 F. Supp. 1304, 1313 (D.N.J. 1995); Pittston Coal Group v. Sebben, 488 U.S. 105, 115 n.2 (1988)).

-18-

Furthermore, Defendant disputes Plaintiffs' construction of the definition of "Employee" on the ground that it would render the entire agreement meaningless. (Def. Sur-Reply at 4) (citing Pan Am. Realty Trust v. Twenty One Kings, Inc., 408 F.2d 937, 939 (3d Cir. 1969); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1132 (3d Cir. 1969); Corhill Corp. v. S.D. Plants, Inc., 9 N.Y.2d 595, 599 (1961) (all for the proposition that any construction which would render the agreement meaningless should be avoided)). The Formation Agreement provided that (1) WPFA would operate the broker-dealer which would employ all retail financial advisors; (2) Wachovia Corp. would provide payroll and other services to that broker-dealer; and (3) MasterShare would be transferred to WPFA. Thus, Defendant argues, WPFA's entering into the Master Agreement should be construed as a delegation to Wachovia Corp. of its payroll functions. Defendant contends that this delegation is of no legal consequence because WPFA's contracting with Wachovia Corp. to provide payroll services to Wachovia Securities is no different from WPFA's utilizing an independent payroll service to provide such services. Therefore, WPFA remained ultimately liable for the performance of the paymaster's functions because delegation of contractual obligations "does not relieve the delegant of the ultimate responsibility to see that the obligation is performed." Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 924 (2d Cir. 1977) (citing Davidson v. Madison Corp., 257 N.Y. 120, 125 (1931)). In effect, WPFA continued to function as paymaster for Wachovia Securities. Accordingly, Plaintiffs fell within the MasterShare definition of "Employee" because they were employed by Wachovia Securities and thus were individuals employed by an affiliate for whom WPFA functioned as a paymaster.

It is the finding of this Court that Plaintiffs' proposed amendment to add a claim for actual

or nontermination raises questions of fact needing further discovery.  Thus, the proposed actual termination claim is not futile and Plaintiffs' are granted leave to amend their complaint to add a count for actual termination.

### B.   Effect of Formation Agreement and 2003 Amendment

Plaintiffs' proposed actual termination claim also raises issues regarding the effect of the Formation Agreement and the 2003 Amendment.  At issue in this claim is the following provision, Paragraph 8.4(f)(i)(A) of the Formation Agreement:

> any participants in [the MasterShare programs] who become employed by Wachovia or the Company Entities pursuant to Section 8.4(a) above will not be deemed for purposes of the MasterShare Programs, to have an involuntary termination of employment unless and until such individuals are actually terminated from employment by Wachovia, its Affiliates and the Company entities.

A plain reading of this provision indicates that Plaintiffs were not involuntarily terminated by Prudential when they commenced employment with Wachovia Securities.  However, Plaintiffs argue that this provision must be disregarded because the Formation Agreement "was not binding on Plaintiffs or any other Class members because they were strangers to the Formation Agreement." (Pls. Br. at 5) (citing Counsel Abstract, Inc. Defined Benefit Pension Plan v. Jerome Auto Ctr., 805 N.Y.S.2d 15, 16 (1st Dept. 2005); Cole v. Levy, 208 N.Y.S. 481, 489 (3d Dept. 1925); Edmonston v. Drake, 30 U.S. 624, 638 (1831)).   Specifically, Plaintiffs argue that the Formation Agreement does not affect the rights of Plaintiffs with respect to the vesting of or payment of their interests in their MasterShare Plan Accounts or re-define what constituted termination of employment for purposes of the Plan.  On this basis, Plaintiffs claim that they were "terminated on a not-for-Cause basis when they ceased being employed by Prudential and became the employees of Wachovia."

-20-

(Pls. Br. at 9) (citing <u>Sigmon v. Goldstone</u>, 101 N.Y.S. 984, 985 (1st Dept. 1906)).  Plaintiffs further

argue that their MasterShare interests should have been allowed to vest and that Wachovia Securities

was not entitled to forfeit their accounts.  (Pls. Br. at 9-10.)

The strength of Plaintiffs' theory regarding the non-applicability of Paragraph 8.4(f)(i)(A)

of the Formation Agreement is undermined by the June 2003 Amendment to the MasterShare Plan.

First, it should be noted that Prudential was vested with the authority to amend the MasterShare Plan:

> The Corporation, through its Board of Directors, acting in its complete, sole and absolute
> discretion, without notice to or consent of any Participant or beneficiary reserves the right
> to amend, modify, restate . . . the Plan at any time, in whole or in part.

(Waldrop Decl., Ex. B, Art. XIX, p. 17.)  Additionally, the June 2003 Amendment provided that

> 1.    Except as required otherwise due to the ongoing administrative functions to
> be performed by Prudential Financial Inc., all references in the MasterShare
> Programs to PSI or to Prudential Securities Incorporated are hereby deemed
> to be references to LLC[4].

(Declaration of James E. Cecchi ("Cecchi Decl.") Ex. B.)  Furthermore, the MasterShare vesting

provision, as amended in 2003, provided that "if a Participant's employment is terminated by WPFA

or affiliates on a not-for-Cause basis . . ., his Shares would become vested."  (Waldrop Decl., Ex.

B, Art. X(B), p.14.)  In other words, under the amended MasterShare Plan, Plaintiffs' shares became

vested only if they were terminated without cause by WPFA or its affiliates at the time of the

transition from Prudential to the Wachovia entities.  Thus, Plaintiffs' proposed amendment to add

Count V, which seeks payment of plan benefits as a result of an "actual termination" by Prudential,

is futile because an actual termination by Prudential would not have caused Plaintiffs' shares to vest -

---

[4]The June 2003 Amendment uses "LLC" as an abbreviation for WPFA.

only a termination without cause by WPFA or its affiliates would have caused the shares to vest. Relying on the June 2003 Amendment, Defendant notes that "the transfer of employment from Prudential to Wachovia *commenced* employment with "WPFA or affiliates," rather than *terminated* such employment. (Def. Opp'n Br. at 13) (emphasis in original). In other words, it is Defendant's position that Plaintiffs were never terminated by Prudential.

There is no reason for this Court to find that the June 2003 Amendment to the MasterShare Plan, replacing WPFA and its affiliates for Prudential, is not valid. Accordingly, Wachovia properly replaced Prudential as the "Corporation" under the MasterShare agreement and Plaintiffs are bound by this change. The proposed amendment regarding the non-binding effect of the Formation Agreement is thereby futile.

## VI.   PROPOSED COUNT IV: CONSTRUCTIVE DISCHARGE BY WACHOVIA SECURITIES

Plaintiffs seek to amend the Complaint to include a formal constructive termination count and to add new factual allegations in support of their constructive discharge theory for relief. In Plaintiffs' First Amended Complaint they allege that they were constructively discharged; however, Plaintiffs did not plead constructive discharge as one of their Counts. (First Am. Compl. ¶¶33-35.) Specifically, Plaintiffs seek to add allegations that describe how Wachovia Securities changed their compensation formula which "threatened to cause an actual loss in income to the Plaintiffs." Defendant argues that these amendments are futile because these new allegations do not state facts to show that Plaintiffs' working conditions were intolerable. Additionally, Defendant notes that Plaintiffs do not seek to add any additional claims that show deliberate intent on the part of Defendant to create the alleged intolerable working conditions at Wachovia Securities.

### A.    Intolerable Working Conditions

This Court must determine whether Plaintiffs' additional allegations regarding the altered compensation formula would change this Court's analysis on Plaintiffs' constructive discharge claim.  Defendant concedes that "[t]he allegations that branch managers would not be paid may appear to constitute intolerable working conditions." (Def. Opp'n Br. at 17.)  However, Defendant insists that these allegations are baseless when viewed in the context of the actual compensation plan because Plaintiffs' allegations "focus[] on one of the six components of 2004 branch manager compensation." (Def. Opp'n Br. at 17.)  In response to this argument, Plaintiffs contend that the Plan as a whole does not contradict Plaintiffs' allegation "that the end result of this plan was Prudential-legacy Branch Managers were going to be working for free for the last six months of 2004."  (Pls. Reply Br. at 9.)

It appears that Plaintiffs' proposed amendments regarding the constructive termination claim are not futile because consideration of these allegations would change the Court's analysis regarding whether Plaintiffs' working conditions were intolerable.  Plaintiffs' allegations that branch managers would not be paid raise Plaintiffs' "right to relief above the speculative level." Twombly, 127 S.Ct. at 1965.  Thus, with these additional allegations, Plaintiff does not fail to state a claim upon which relief can be granted.  See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

### B.    Intent Element

Additionally, Defendant argues that Plaintiffs' proposed amendments would be futile because Plaintiffs' new allegations do not satisfy the intent element of a constructive discharge claim.  Both

parties agree that in order to prevail on a constructive discharge claim Plaintiffs must not only establish that the working conditions were intolerable but also that "the actions of the employer in creating the intolerable workplace condition [were] deliberate and intentional." Morris v. Schroder Capital Mgmt Int'l, 7 N.Y.3d 616, 622 (2006). Here, Defendant contends that Plaintiffs' claim should fail because Wachovia Securities did not intend to create intolerable workplace conditions. (Def. Opp'n Br. at 19) (citing Petrosino v. Bell Atl., 385 F.3d 210, 231 (2d Cir. 2004); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)). However, contrary to Defendant's argument, New York law does not require specific intent by the employer on a constructive discharge claim. See Petrosino, 385 F.3d at 230. Rather, Plaintiffs need only "demonstrate that the employer's actions were 'deliberate' and not merely 'negligen[t] or ineffective[]." Id. (quoting Whidbee, 223 F.3d at 74). Accordingly, Plaintiffs' First Amended Complaint is not deficient for failure to state that Defendant acted with intent in creating the alleged intolerable working conditions and thus, Plaintiffs' proposed amendments as to Count IV are not futile and leave to amend is granted to add this constructive discharge count.

## VII.   COMMON LAW CLAIMS

Plaintiffs' unjust enrichment, conversion claims, breach of fiduciary duty and proposed tortious interference claims are all premised on Plaintiffs' theory that the MasterShare Plan was improperly assigned and is thereby unenforceable. On this basis, Plaintiffs argue that their common law claims are viable because the allegedly unenforceable MasterShare contract does not govern Plaintiffs' rights; instead, Plaintiffs' proper remedy for recovery of their contributions is unjust enrichment. Similarly, Plaintiffs contend that their conversion claim is viable based on their

-24-

allegations that Defendant interfered with Plaintiffs' interest or possessory right in the contributions they made to the MasterShare Plan.  Additionally, the futility of Plaintiffs' proposed amendments regarding common law claims depend upon the validity of Prudential's assignment of the MasterShare Plan to Wachovia.  To the contrary, Defendant argues that Plaintiffs' common law claims should be dismissed on their face and that Plaintiffs' proposed amendments regarding these claims are futile because MasterShare is a valid contract between Wachovia Securities and Plaintiff.  Thus, Plaintiffs may not prevail on an unjust enrichment or conversion claim because the MasterShare contract governs the parties' rights.  Before this Court reaches the merits or the futility of Plaintiffs' common law claims, it is first necessary to determine whether the MasterShare Plan is an enforceable contract between the parties despite Prudential's transfer of the MasterShare obligations to Wachovia.

### A.    Validity of Anti-Assignment Clause

Critical to the futility analysis of Plaintiffs' proposed common law claims is the issue of whether Prudential's transfer of the MasterShare Plan obligations to the Wachovia entities violated the Plan's anti-assignment provision.  Specifically, the MasterShare Plan provides that

> *Any amount credited to a Participant's Deferral Account*, and the Shares and/or Enhanced Premium Shares, if any, which have been deposited to his MasterShare Account *may not be assigned*, pledged, transferred, alienated or otherwise disposed of, or subjected to garnishment, bankruptcy proceeding, transfer by operation, or legal process and any purported transfer or assignment shall be void *ab initio*.

(Waldrop Decl., Ex. B., Art. XVII, p. 17) (emphasis added).  Plaintiffs contend that this provision should be read to prohibit *any* attempted assignment of any amounts in a MasterShare account and that any such assignment is void *ab initio*.  Building on this interpretation of the anti-assignment

provision, Plaintiffs argue that Prudential's transfer of its interest in the MasterShare Plan to the Wachovia entities was void because it violated the anti-assignment provision.

Plaintiffs' reading of the anti-assignment provision convolutes the plain meaning of the provision and also contradicts other provisions contained in the MasterShare Plan.  Article XVII, entitled "Non-Assignability," clearly applies to only "amount[s] credited to a participant's deferral account and shares" - it does not refer or apply to the assignability of the Plan itself.  Moreover, other provisions of the Plan support a finding that Article XVII does not prohibit assignation of the Plan itself but only prohibits assignation of Plaintiffs' accounts and shares.  First, Article IV.A, "Risk Factors," warns that "[s]hares . . . deposited in a Participant's MasterShare Account are non-transferable and are thus illiquid until the conclusion of the applicable Restricted Period." (Waldrop Decl., Ex. B., Art IVA., p. 5.)  Thus, the Plan stated in more than one article that Plaintiffs may not assign their accounts or shares under the Plan.  Second, the Plan contemplates Prudential's assignation of its obligations:

> The obligations of the Corporation under the Plan shall be binding upon its assignee(s), any successor corporation or organization resulting from the merger, consolidation or other reorganization or from any reincorporation or change of name of the Corporation or upon any change in control.

(Waldrop Decl., Ex. B, Art. XXIII, p. 18.)  Thus, a plain reading of the Plan as a whole indicates that (1) Prudential, or the "Corporation" pursuant to the Plan, is vested with the authority to assign its obligations under the MasterShare Plan; and (2) only Plaintiffs were prohibited from assigning their interest in their MasterShare accounts or shares.  This Court is obligated to read the provisions of the Plan as a whole "and every part will be interpreted as to give effect to its general purpose." Adams v. Suozzi, 433 F.3d 220, 228 (2d Cir. 2005 ); Kinek v. Paramount Commc'ns, Inc., 22 F.3d

-26-

503, 509 (2d Cir. 1994).  Accordingly, it is the finding of this Court that Prudential's transfer of its interest in the MasterShare Plan to the Wachovia entities did not violate the Plan's anti-assignability provision.

Finally, Plaintiffs set forth the argument that the MasterShare Plan is not assignable because it is an executory contract.  Plaintiffs rely on the common law principle that "[e]xecutory contracts for personal services or those involving a relationship of personal confidence are not assignable by one party unless the other party consents or waives the right to object."  6A N.Y. Jur. 2d Assignments § 11; see also Seligman & Latz v. Noonan, 104 N.Y.S.2d 35, 37-39 (Sup. Ct. Monroe Co. 1951).  As Defendant notes, Plaintiffs' position is faulty because the section of *New York Jurisprudence* upon which they rely continues to state that the assignment of "the right to labor of someone who never agreed to such employment" is prohibited.  6A N.Y. Jur.2d Assignments § 11.  Moreover, this common law restriction on assignments does not apply to payment obligations.  See CORBIN ON CONTRACTS § 856 at 388 (Interim ed. 2002); Eisner Computer Solutions, LLC v. Gluckstern, 741 N.Y.S.2d 511 (1st Dep't 2002).  Here, the MasterShare Plan is not a contract for personal services but rather involves the payment obligations of Prudential and the Wachovia entities.  The MasterShare Plan is not an executory contract and is therefore not fundamentally non-assignable.

## B.    Unjust Enrichment & Conversion

Having concluded that the anti-assignment provision did not prohibit Prudential's transfer of its interest in the MasterShare Plan to the Wachovia entities, this Court must next consider whether Plaintiffs' common law conversion and unjust enrichment claims are precluded because the

MasterShare Plan governs the parties' rights.  Defendant contends and Plaintiff does not dispute that unjust enrichment is a quasi-contract claim and that an unjust enrichment claim may not lie where the disputed issues are controlled by contract.  See Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (2005) (citing State of N.Y. v. Barclays Bank of N.Y., 76 N.Y.2d 533, 540 (1990); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)); Singer Asset Fin. Co., LLC v. Melvin, 33 A.D.3d 355 (1st Dep't 2006)).  Here, the matters raised by Plaintiffs' unjust enrichment claim are controlled by contract.  Thus, it is the finding of this Court that Plaintiffs may not seek relief based on a claim for unjust enrichment but rather, must seek relief pursuant to the terms of the Plan itself.

Similarly, Plaintiffs' conversion claim is precluded because New York law provides that when a contract between the parties governs their rights to property alleged to have been converted, the conversion claim must be dismissed.  See Yeterian v. Heather Mills N.V. Inc., 183 A.D.2d 493, 494 (1st Dep't 1992); MBL Life Assurance Corp. v. 555 Realty Co., 240 A.D.2d 375 (2d Dep't 1997).  Thus, this Court also concludes that Plaintiffs' additional allegations supporting its claim for conversion are futile because the property at issue - Plaintiffs' contributions to the MasterShare Plan - are governed by the Plan itself.

## C.    Breach of Fiduciary Duty

Plaintiffs' Count III alleges that Wachovia breached a fiduciary duty by "wrongfully forfeiting" their contributions to the MasterShare Plan. Similar to Plaintiffs' other common law claims, this Count is duplicative of a breach of contract claim. See Kaminsky v. FSP Inc., 5 A.D.3d 251, 252 (1st Dep't 2004) (dismissing breach of fiduciary duty claim that failed to allege conduct

by defendants other than breach of duties established by the parties' contract).  Similarly, in <u>Denes</u> <u>v. Prudential Sec. Inc.</u>, a Michigan court applied New York law to the plaintiff's claims regarding the MasterShare Plan and found that dismissal was appropriate as to the plaintiff's breach of fiduciary duty claim because "[c]ourts have consistently held there is no breach of fiduciary duty where a fiduciary has acted in accordance with the contractual terms establishing that relationship." No. 02-40003-CZ (Mich. Cir. Ct. Aug. 7, 2002) (Warren Decl. Ex. D at 12).

Even assuming that Wachovia owed a fiduciary duty, Plaintiffs' allegations regarding Wachovia's breach of fiduciary duty are wholly based on the duties that Wachovia owed as Plan Administrator.  Specifically, Plaintiffs allege that MasterShare imposed certain duties upon Wachovia including the duty to distribute Plaintiffs' funds.  Plaintiffs further contend that Wachovia's alleged wrongful forfeiture of Participants' contributions constituted a breach of their duties under the Plan.  It is evident on the face of the pleadings that Plaintiffs' only allegations supporting Wachovia's alleged breach of a fiduciary duty are allegations regarding breach of Wachovia's duties owed under the Plan.  Accordingly, Plaintiffs may not prevail on a breach of fiduciary claim because the MasterShare Plan governs the parties' rights.

### D.    Tortious Interference

In the proposed third amended complaint, Plaintiffs seek to add a claim for tortious interference with Plaintiffs' rights under the MasterShare Plan.  This claim for relief is based on Plaintiffs' theory that no contractual relationship existed between Plaintiffs and Wachovia Securities with respect to the MasterShare Plan.  Specifically, Plaintiffs argue that Prudential's rights and obligations under the MasterShare Plan were assigned to Wachovia Securities contrary to the anti-

-29-

assignment clause and, accordingly, Wachovia Securities is a third-party to the MasterShare Plan.

Additionally, Plaintiffs contend that the June 2003 Amendment created a contractual relationship

between WPFA and Plaintiffs - not between Wachovia Securities and Plaintiffs.  In sum, Plaintiffs'

theory for relief is based on the premise that Wachovia Securities was a third party to the agreement

between WPFA and Plaintiffs.  On this basis, Plaintiffs argue that Wachovia Securities tortiously

interfered with the contract between WPFA and Plaintiffs by forfeiting Plaintiffs' MasterShare

accounts because, under the terms of the Plan, the accounts should have been paid to the Plaintiffs.

> To prevail on a claim for tortious interference with contract, a plaintiff must allege
> the existence of a valid contract between the plaintiff and a third party, defendant's
> knowledge of that contract, defendant's intentional procurement of the third party's
> breach of the contract without justification, actual breach of the contract, and
> damages resulting therefrom.

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996); see also Beecher v. Feldstein,

8 A.D.3d 597, 598 (2d Dep't 2004).  A claim for tortious interference cannot be brought against a

"party to the allegedly interfered-with agreement."  See Buller v. Giorno, 28 A.D.3d 258, 259 (1st

Dep't 2006).  Here, Defendant argues that Plaintiffs cannot prevail on a claim for tortious

interference because (1) Wachovia Securities is a party to the MasterShare Plan; and (2) the proposed

third amended complaint fails to allege malice or fraudulent or illegal means.  (Def. Opp'n Br. at 20-

21.)  Accordingly, Defendant argues that Plaintiffs' proposed amendment to add a claim for tortious

interference is futile.

In determining whether Plaintiffs' proposed amendment to add a claim for tortious

interference is futile, the Court must first determine whether Wachovia Securities is a third party to

the MasterShare Plan.  Plaintiffs' sole basis for this claim is that the transfer violated the anti-

-30-

assignment clause.  (Pl. Br. at 10.)  As set forth above, it is the finding of this Court that Prudential's transfer of its interest and obligations in the MasterShare Plan did not violate the anti-assignment clause.  Accordingly, there is no reason to find that Wachovia Securities is a third party to the MasterShare Plan.  Thus, Plaintiffs cannot show, under any set of facts, that Defendant tortiously interfered with Plaintiffs' rights under the MasterShare Plan.  Accordingly, Plaintiffs' motion for leave to amend the Complaint to add a claim for tortious interference is denied.

## VIII.  NEW YORK LABOR LAW CLAIMS

Plaintiffs' Count VI seeks relief pursuant to § 191 of New York Labor Law, alleging that Plaintiffs' contributions under the MasterShare Plan and Wachovia Plan qualified as "wages" and that Defendants willfully failed to pay Plaintiffs their wages and benefits upon termination of employment.  (Am. Compl. ¶¶82-83.)  As an initial matter this Court must determine whether the Shares constitute "wages" protected by Labor Law.  Labor Law § 190(1) defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."  See Guiry v. Goldman, Sachs & Co., 31 A.D.3d 70, 72 (1st Dep't 2006).  On this basis, Defendant contends that Plaintiffs' Shares at the time of distribution do not constitute "wages," as defined by § 190(1) because their value depended solely on Prudential's performance and had no connection to work performed by participants after making MasterShare contributions.  In support of this argument Defendant relies heavily on Guiry wherein the First Department concluded that the forfeiture of unvested equity-based compensation did not violate New York Labor Law because "the ultimate value of such equity based-compensation would depend on [the employer's] stock price after the rights vested, at the time of delivery."  Id. at

-31-

71.  Further, the Court reasoned that the compensation did not constitute "wages" because "its value to the recipient depends on the firm's 'overall financial success,' not simply on the employee's 'personal productivity.'" Id. at 73 (quoting Truelove v. Northeast Capital & Advisory, Inc. 95 N.Y.2d 221, 224 (N.Y. 2000)).  Plaintiffs attempt to distinguish the Guiry holding, arguing that they "were paid their salary, which had a set value at the time it was paid" but that "Plaintiffs elected to have a portion of their salary invested in the Plan."  (Pls. Opp'n Br. at 29.)  This hair-splitting is unpersuasive.  As set forth in Truelove and re-affirmed by Guiry, the value of Plaintiffs' Shares was "based on factors falling outside the scope of the employee's actual work."  Id. (quoting Truelove, 95 N.Y.2d at 224 and Tischmann v. ITT/Sheraton Corp., 882 F. Supp. 1358, 1370 (1995)). Consistent with this line of cases, it is the finding of this Court that Plaintiffs' Shares do not constitute "wages" as defined by § 901 of New York Labor Law.  Accordingly, Plaintiffs' Count VI seeking relief pursuant to New York Labor Law is dismissed.

## IX.  CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion to dismiss is **denied** as to Count I (Recovery of ERISA Benefits) and Count II (Breach of Fiduciary Duty pursuant to ERISA) and is **granted** as to Count III (Breach of Fiduciary Duty pursuant to New York law), Count IV (Unjust Enrichment), Count V (Conversion) and Count VI (Violation of New York Labor Law).  Additionally, this Court **grants** Plaintiffs leave to amend the Class Action Complaint to add counts for actual discharge and for constructive discharge and **denies** Plaintiffs leave to amend the Class Action Complaint to add a claim tortious interference or to add allegations in support of Plaintiffs' unjust enrichment and conversion claims.   An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        August  27  , 2007