**NOT FOR PUBLICATION**                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GARY S. SERIO, et al.,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br><br>**WACHOVIA SECURITIES, LLC,**<br><br>                    **Defendants.** | **Hon. Mark Falk**<br>**Civil Action No. 06-4681 (MF)**<br><br><br>**AMENDED OPINION**[1] |

        This matter comes before the Court by way of Plaintiffs' motion for final approval of the proposed class action Settlement Agreement and Class Counsel's petition for an award of attorneys' fees and reimbursement of expenses.  On November 21, 2008, this Court issued an Order granting preliminary approval of the Settlement Agreement. See CM/ECF Docket Entry No. 48.  A fairness hearing was held on March 3, 2009.  The Court has considered the parties' submissions, including two objections,[2] as well as the oral argument made at the hearing.  Based on the reasons that follow, Plaintiffs' motion is **granted** in its entirety.

## BACKGROUND

        Plaintiffs are generally a group of former Wachovia financial advisors and branch managers who were originally employed by Prudential.

---

        [1] The Court's March 31, 2009 Opinion is amended solely to correct the inadvertent inclusion of footnote number 4 in the text of the original opinion.

        [2] The Court notes that three class members originally filed objections to the proposed Settlement Agreement: (1) John Ryan, (2) Michael Dobbins, and (3) Russell Stabley.  However, by way of letter to the Court dated February 27, 2009, Michael Dobbins withdrew his objection.

**A.      The MasterShare Plan**

During their employment with Prudential, Plaintiffs participated in and contributed to Prudential's MasterShare Plan (the "MasterShare Plan").  The MasterShare Plan was a deferred compensation program that gave Prudential employees the opportunity to invest pre-tax earnings through payroll deductions in shares of the Prudential Stock Index Fund at a 25% discount of the purchase price of Prudential securities.  The shares were then deposited into a customer account established for the participant, vesting three years after the date of purchase.   Pursuant to the MasterShare Plan, any participant who voluntarily terminated his or her employment with Prudential or was terminated for cause during the three-year period following the date of purchase would forfeit his or her shares.

**B.      The Wachovia Plan**

On February 19, 2003, Wachovia and Prudential entered into an agreement (the "Agreement") providing for the transfer of Prudential's retail brokerage and other related assets to Wachovia/Prudential Financial Advisors, LLC.  The Agreement provided that all Prudential employees working for Prudential's brokerage division would become employees of Wachovia Securities as of June 30, 2003.  Wachovia subsequently replaced the MasterShare Plan with the Wachovia Securities Transitional Deferred Compensation Plan (the "Wachovia Plan") (collectively, the MasterShare Plan and the Wachovia Plan are referred to as the "Plans").

**C.      Termination of Employment**

Plaintiffs allege, generally, that Wachovia Securities constructively terminated their employment as a result of the "impossible" working conditions and "intolerable workplace" environment existing at Wachovia.  As a result of these alleged working conditions, Plaintiffs claim

2

that they were unable to provide their clients with the type of financial services to which they were accustomed.  Following their alleged constructive termination, Plaintiffs attempted to receive payment of their wage contributions to the Plans.

**D.      Plaintiffs' Complaint**

On September 28, 2006, Plaintiffs commenced a putative class action to: (1) obtain wages that they allegedly contributed to the Plans, and (2) to obtain the wages contributed to the Plans by the class they sought to represent.  In this regard, Plaintiffs sought relief pursuant to the non-forfeiture provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), New York common law and New York labor law.

After the initial Complaint was filed, Wachovia filed a motion to dismiss each of Plaintiffs' claims.  On August 27, 2007, the Honorable Dennis M. Cavanaugh, U.S.D.J., granted in part and denied in part Wachovia's motion to dismiss.  See CM/ECF Docket Entry No. 28.   Plaintiffs' Amended Complaint asserts causes of action for: (1) recovery of benefits under the nonforfeiture provisions of ERISA, (2) constructive discharge, and (3) a claim that Plaintiffs were entitled  to benefits even though they voluntarily stopped work.   Wachovia has denied any wrongdoing throughout the litigation and has challenged each of Plaintiffs' allegations.

**E.      Settlement Negotiations**

The parties began initial settlement discussions in the fall of 2007.  The parties subsequently participated in a mediation session before the Honorable Edward E. Infante.  Although the mediation itself failed, the parties continued to engage in negotiations.  By November 2008, the instant proposed Settlement was reached.  Shortly thereafter, the parties consented to have the undersigned conduct any and all proceedings in this case, including the trial, entry of final judgment, and all post-

judgment proceedings.  An Order of Reference was entered by the Honorable Dennis M. Cavanaugh, U.S.D.J., on November 13, 2008. See CM/ECF Docket Entry No. 47.

**F.    Proposed Settlement**

The proposed settlement provides for total consideration to the Class of $1,005,000.00 in exchange for: (1) the release of the claims of the Plaintiffs' Class; (2) Class Counsels' attorneys' fees; (3) Plaintiffs' expenses; (4) Class representative enhancements; (5) interest; and (6) Claims Administration expenses.

Under the terms of the proposed Settlement, Financial Advisors and Financial Advisors-In-Training who contributed to the MasterShare Plan would receive 4% of their wage contributions. Financial Advisors and Financial Advisors-In-Training who contributed to the Wachovia Plan would receive 3% of their wage contributions.  Branch Managers who contributed to the MasterShare Plan would receive $500.   However, if the total settlement fund, reduced by Class Counsels' fees and expenses, is not sufficient to pay these amounts then the awards to all Class Members would be reduced on a pro rata basis.  Finally, the Class Settlement excludes from its terms all claims for class-wide resolution of Plaintiffs' constructive discharge claims.[3]

**G.    Notice**

Following this Court's preliminary approval of the Plaintiff Class and the proposed Settlement Agreement in November 2008, Wachovia provided to the Claims Administrator and

---

[3] In granting preliminary approval of the Class Action Settlement Agreement, this Court found that the prerequisites for a class action under Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) had not been satisfied with regard to the alleged constructive discharge claims.  In particular, the Court explained that, based upon the specific facts in this case and the record before the Court, each resignation – and the reasons underlying same – should be analyzed on a case-by-case basis.  As a result, the Court found that such claims are not appropriate for class determination. See CM/ECF Docket Entry No. 48.

Class Counsel the names and addresses of all individuals identified in Wachovia's records as Class Members. The Claims Administrator mailed the direct mail notice within thirty (30) days of this Court's preliminary approval. The notice informed Class Members of the period of time in which they could file objections to the settlement. The Claims Administrator has submitted a certification attesting to same. Out of over six hundred (600) notice packets mailed, to date, only two Class Members have filed objections with respect to any aspect of the proposed Settlement. No objections were filed with respect to the proposed award of attorneys' fees.

## DISCUSSION

**A.    Certification of Settlement Class**

The Court preliminarily found that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) were met. Based on the reasons that follow, the Court finds that all such requirements are, in fact, satisfied; therefore, the Class should now be finally certified.

**1.    Requirements of Fed. R. Civ. P. 23(a)**

The four requirements of Federal Rule of Civil Procedure 23(a) are that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>Weiss v. York. Hosp.</u>, 745 F.2d 786, 807 (3d Cir. 1984). Such requirements are commonly referred to as numerosity, commonality, typicality and adequacy of representation.

See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir. 2004).

### Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.   Impracticality does not, however, mean impossibility.   See, e.g., Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 405 (D.N.J. 1990). The Third Circuit has found the numerosity requirement satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs." Eisenberg v. Gagnon, 766 F.2d 770, 785-86 (3d Cir.), cert. denied, 474 U.S. 946 (1985).      Similarly, in this case, joinder of all class members is impracticable because there are hundreds of class members dispersed through the United States.  None of the Class members dispute that this requirement has been met.   Thus, the Court finds that the Class satisfies the numerosity requirement.

### Commonality

Next, Plaintiffs must demonstrate that there are questions or fact or law that are common to the Class to satisfy the commonality requirement.  Fed. R. Civ. P. 23(a)(2).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (internal citations omitted).

Here, the commonality requirement is satisfied because common questions of law and fact exist as to all members of the Class.   Among such common questions of law and fact are: (1) whether the MasterShare Plan or the Wachovia Plan is an ERISA protected plan, (2) whether the surrounding circumstances suggest that the Plans are subject to ERISA, (3) whether the MasterShare

6

Plan or the Wachovia Plan were retention rather than retirement plans designed to encourage employee longevity, (4) whether the atmosphere at Wachovia was so intolerable as to compel a reasonable person to leave, and (5) whether members of the Class have sustained damages, and if so, the appropriate measure of same.  All claims at issue arise from the same nucleus of operative facts and pursuant to the same legal theories. See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001) (finding that the commonality requirement will be satisfied where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (citations omitted).  Accordingly, the Court finds that the Class satisfies the commonality requirement.

Typicality

Rule 23(a)(3) requires that "the claims of . . . the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. Id. at 57. This requirement does not mandate that all putative class members share identical claims." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998). Factual differences between the class representatives and other members of the class do not preclude a finding of typicality. See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 311 (3d Cir. 1998) (noting that " 'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.").

Here, Plaintiffs' claims, as well as the Class's claims, clearly arise out of the same events and practices alleged to have been perpetrated by Defendant.  For instance, Plaintiffs allege that all Class

7

members sustained injury as a direct result of the loss of their contributions to the Plans and their alleged constructive discharge claims.  In addition, all Class members make the same legal claims under ERISA, New York common law, and New York labor law.  Consequently, the Court finds that the Class satisfies the typicality requirement.  See, e.g., Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977) (finding the typicality requirement met where the "claims pressed by the representatives are identical to those which they press on behalf of the class generally.").

Adequacy of Representation

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

Both prongs are easily satisfied here. First, there are no conflicts of interest between the Plaintiffs and other Class members.  It is alleged that Plaintiffs, like the other Class members, were damaged because of Defendant's allegedly unlawful conduct and the Plaintiffs would have to prove the same wrongdoing as the absent Class members in order to establish Defendant's liability.  In addition, Plaintiffs have acted, and continue to act, as fiduciaries of the Class and their interests are directly aligned with those of other Class members.

Second, Plaintiffs have retained attorneys who are highly qualified, experienced and certainly able to conduct this litigation.  In fact, Class Counsel are all experienced in class action litigation, in particular, and have successfully prosecuted numerous class actions throughout the United States. The adequacy requirement of Rule 23(a) has, therefore, been met.

In light of the foregoing, it is clear that the Class has demonstrated compliance with each of

8

the four prongs of Rule 23(a).  The Court turns now to the requirements of Rule 23(b)(2).

2.      **Requirements of Fed. R. Civ. P. 23(b)(2)**

Federal Rule of Civil Procedure 23(b)(2) allows a court to certify a class, barring opt-outs, where the defendant has acted or refused to act in a way that is applicable to the entire class, making equitable and/or declaratory relief for the class as a whole appropriate. See, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) (finding Rule 23(b)(2) certification appropriate where several key factual questions were dispositive as to all class members); In re Am. Family Enterprises, 256 B.R. 377, 416 (D.N.J. 2000) ("[W]here the requirements for certification of a class under Rules 23(b)(1)(B) or 23(b)(2) have been satisfied, there is no constitutional or other right to opt-out of the class.").  Rule 23(b) certification is proper here because the basis for the suit is Wachovia's alleged failure to return certain deferred compensation plan contributions – a practice applicable to all Class members.  In addition, for purposes of Rule 23(b)(2) certification, courts routinely characterize injunctions requiring the payment of monies unlawfully withheld as injunctive, rather than monetary, relief – particularly in ERISA cases such as this one. See, e.g., In re Citigroup Pension Plan ERISA Litig., 241 F.R.D. 172, n. 69 (S.D.N.Y. 2006).  In fact, numerous ERISA cases like this one have been certified under Rule 23(b)(2) without affording an opt-out right. See, e.g., In re Global Crossing Secs. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004); In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 844, 847-48 (N.D. Cal. 2005); Amara v. CIGNA Corp., 559 F. Supp. 2d 192, 200 (D. Conn. 2008).  Therefore, the Court finds that proceeding under Rules 23(a) and 23(b)(2) is perfectly appropriate in this case.

B.      **Fairness of Class Action Settlement**

Under Federal Rule of Civil Procedure 23(e), any proposed class action settlement must be

9

approved by the district court, and reasonable notice must be provided to all class members who may

be bound by such settlement. See Fed. R. Civ. P. 23(e).   Even where the requirements for

certification under Rule 23 have been met, approval is warranted only if the Court also determines

that the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under this rule, the

court acts as a fiduciary who serves as a guardian of the rights of absent class members. See In re

Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995).

In doing so, the court must "independently and objectively analyze the evidence and circumstances

before it in order to determine whether the settlement is in the best interest of those whose claims

will be extinguished."  Id. (quotation omitted).  This determination is ultimately left to the sound

discretion of the district court. See Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

The  Third  Circuit  has  identified  nine  factors  that  a  district  court  should  consider  in

determining the fairness of a proposed class action settlement.[4]  These include: (1) the "complexity,

---

[4] However, the Girsh factors do not provide an exhaustive list of factors to be considered.
Instead, as recently articulated by the Third Circuit, "because of a 'sea-change in the nature of class
actions' since Girsh was decided in 1975, district courts should also consider other potentially
relevant and appropriate factors." In re AT & T Corp., 455 F.3d 160, 165 (3d Cir. 2006).  These
include:

> [T]he maturity of the underlying substantive issues, as measured by the experience
> in adjudicating individual actions, the development of scientific knowledge, the
> extent of discovery on the merits, and other factors that bear on the ability to assess
> the probable outcome of a trial on the merits of liability and individual damages; the
> existence and probable outcome of claims by other classes and subclasses; the
> comparison between the results achieved by the settlement for individual class or
> subclass members and the results achieved-or likely to be achieved-for other
> claimants; whether class or subclass members are accorded the right to opt out of the
> settlement; whether any provisions for attorneys' fees are reasonable; and whether the
> procedure for processing individual claims under the settlement is fair and
> reasonable.

Id.

expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . ." Girsh, 521 F.2d at 156 -157.       In addition, the Third Circuit has directed district courts to apply an "initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.' " In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535.  The Court now turns to each of these factors.

(i).     Complexity, Expense and Likely Duration of Litigation

Courts have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a class action settlement. See, e.g., Lake v. First Nationwide Bank, 900 F.Supp. 726, 732 (E.D. Pa. 1995); Slade v. Shearson, Hammill & Co., 79 F.R.D. 309, 313 (S.D.N.Y. 1978).

If this litigation were to continue, Plaintiffs' claims would require Plaintiffs to overcome considerable legal and factual challenges.  Adding to such complexities is the fact that the MasterShare Plan and evidence related thereto is highly technical in nature. Indeed, the issues presented in this case are sufficiently complex that a layperson on a jury could have difficulty comprehending them.  As a result, continued prosecution of this case both before and at trial would

likely require the extensive involvement of experts on compensation plans, retirement plans and damages. The trial in this matter would likely last for weeks and result in substantial additional expenditures of time and expense.  In addition, interlocutory and other appeals would inevitably follow, all of which would prolong the case for years.  See, e.g., Weiss v. Mercedes-Benz of North America, Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995) ("Given the crowded state of this Court's calendars, the case would not be tried prior to 1997 [opinion dated May 11, 1995]. It is not unrealistic to predict that, if fully litigated, the present class action would not be concluded before the end of this decade . . . .").  The proposed Settlement, on the other hand, will provide the Class with immediate relief.  Accordingly, this factor weighs in favor of the proposed Settlement.

(ii).    The Reaction of the Class to the Settlement

Out of a class comprised of hundreds of members, only two have objected to the proposed settlement.  A small number of objections favors approval of a class action settlement agreement. See, e.g., Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993) (noting that silence is a "tacit consent" to the agreement); Stoetzner, 897 F.2d at 119 (finding that objections by 29 members of a class comprised of 281 members "strongly favors settlement"). The low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair.   In any event, based on the reasons that follow, the objections of Russell Stabley and John J. Ryan are largely without merit.

Objections

As an initial matter, both objectors cite the fact that this was certified as a no opt-out class under Rule 23(b)(2) as a basis for their objections.  As previously discussed, Federal Rule of Civil Procedure 23(b)(2) allows a court to certify a mandatory class, barring opt-outs, where the defendant

has acted or refused to act in a way that is applicable to the class, making equitable and/or declaratory relief for the class as a whole appropriate. See, e.g., Stoetzner, 897 F.2d at 119; In re Am. Family Enterprises, 256 B.R. at 416.  Rule 23(b)(2) certification was and is proper here because the basis for the suit is Wachovia's failure to return certain deferred compensation plan contributions – a practice applicable to all class members.

Russell Stabley also objects to the Settlement on the basis that: (1) it is unfair to him because he was "separated from service" with Prudential Securities in 2003, and (2) he was "well above normal retirement age" at the time of his resignation.  This Court has already rejected Mr. Stabley's first argument, namely that his MasterShare Plan benefits should have vested at the time when his employment with Prudential ceased.  In particular, Judge Cavanaugh held that "plaintiffs' proposed amendment to add Count V, which seeks payment of plan benefits as a result of an 'actual termination' by Prudential is futile because an actual termination by Prudential would not have caused Plaintiffs' shares to vest – only a termination without cause by WPFA or its affiliates would have caused the shares to vest." See CM/ECF Docket Entry No. 28 at 21-22.  Thus, while Mr. Stabley objects to the Settlement on the basis that class members should receive a higher percentage of their forfeited contributions because they were separated from service at the time they began working for Wachovia, this Court has already held that such a claim is futile.

With respect to Mr. Stabley's second argument, according to the MasterShare Plan, a person is not entitled to vesting of contributions through retirement, regardless of his or her age, if that person begins working for any other firm actively engaged in the financial services prior to completion of a Restricted Period.  See CM/ECF Docket Entry No. 12-6, Ex. B.  Mr. Stabley does not allege that he actually retired from the financial services industry after leaving Wachovia.  In

fact, FINRA public records reveal that upon resigning from Wachovia, Mr. Stabley began working as a registered broker for Janney Montgomery Scott, LLC and continues to be employed by that firm today. See Kaiser Decl., ¶ 2. Thus, Mr. Stabley is not entitled to the vesting of the MasterShare Plan benefits, irrespective of his age at the time he left Wachovia.

John J. Ryan also objects to the Settlement on the following grounds: (1) he claims not to have received notice of the settlement, (2) he is a defendant in an arbitration initiated by Wachovia for collection on a promissory note and, therefore, should be entitled to resolve all disputes with Wachovia in those proceedings, and (3) the settlement value is too low because he has valuable counterclaims pending in arbitration.

As a preliminary matter, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y. 2008). Here, Class Counsel acted reasonably in implementing the notice regime, as detailed in the affidavit of the Claims Administrator attached to Plaintiffs' motion. Wachovia provided the names and addresses of all individuals identified in Wachovia's records as Class Members to the Claims Administrator. Thereafter, the Claims Administrator mailed the direct mail notices to each identified individual. Where notices were identified as undeliverable by the Postal Service, the Claims Administrator searched the United States Postal Service's National Change of Address database and re-sent notices for listed persons. Accordingly, the Claims Administrator used the best practicable method for providing notice. Whether or not Mr. Ryan received actual notice is not dispositive on this issue. See, e.g., id. In any event, the address listed on his objection is the same address used

14

by the Claims Administrator in disseminating the notice. See Kaiser Decl., ¶ 3.

With respect to Mr. Ryan's second argument regarding the implications of the arbitration proceedings initiated by Wachovia, to the extent Mr. Ryan suggests that Wachovia somehow waived its right to settle this class action by initiating an arbitration against Mr. Ryan, he cites to no legal authority – nor is the Court aware of any – which supports the proposition that a defendant in an arbitration has a right to have the arbitrator adjudicate every possible dispute the defendant might have with the party initiating the arbitration.

Finally, the counterclaims Mr. Ryan seeks to preserve have no merit. In particular, his claims for conversion and violation of New York Labor law were expressly rejected by this Court in its August 27, 2007 Opinion and Order. See CM/ECF Docket Entry No. 28 at 26-28; 31-32. Additionally, although the named Plaintiffs here did not assert the other counterclaim raised by Mr. Ryan, that is, the violation of the covenant of good faith and fair dealing, this Court's August 27, 2007 Opinion is fatal to this claim. In particular, the Court held that an express contract between Wachovia and the Class members, namely the MasterShare Plan, governed the terms under which the MasterShare Plan contributions would be returned to participants. See CM/ECF Docket Entry No. 28 at 28. Because a court cannot simply imply a covenant inconsistent with terms expressly set forth in the contract, Mr. Ryan's violation of the covenant of good faith and fair dealing counterclaim is questionable and, therefore, does not weigh against the proposed Settlement. See, e.g., Hartford Fire Ins. v. Federated Dept. Stores, 723 F.Supp. 976, 991 (S.D.N.Y. 1989).

(iii).    The Stage of the Proceedings and Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement." In re General Motors, 55 F.3d at 813. "Through this lens," the Third Circuit has

explained, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." Id.; see also Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999) ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.") (citation omitted).

This matter has been pending before the Court for nearly three years.  During this time period, numerous exhaustive conferences were held before this Court.  Class Counsel conducted discovery and pushed this case forward in a manner favorable to the Class.  Armed with such discovery and due diligence, Class Counsel has demonstrated an adequate appreciation of the merits of this case in arriving at the proposed Settlement.  Therefore, the Court finds that this factor also weighs in favor of the proposed Settlement.

      (iv).    <u>The Risks of Establishing Liability and Damages</u>

In assessing the fairness, reasonableness and adequacy of the settlement, the Court must balance the risks of establishing liability and damages against the certainty of obtaining immediate and substantial recovery through the proposed Settlement.  See, e.g., Girsh, 521 F.2d at 157; see generally Weiss, 899 F. Supp. at 1301 (noting that "the risks surrounding a trial on the merits are always considerable.").

Here, the risks that Plaintiffs face in establishing liability clearly demonstrate that the proposed Settlement provides the Class with a substantial benefit that is not only fair, reasonable and adequate, but an excellent result.  First, it is uncertain that a court would find that the MasterShare Plan was a retirement plan protected by ERISA.  Indeed, to date, at least one court has held that the MasterShare Plan was a retention plan, not an ERISA-protected retirement plan. See, e.g., D.N.J. Civil Action No. 01-4940, Docket Entry Nos. 35, 35.  Second, without a viable constructive

discharge claim, the Class Members' entitlement to a return of their unvested contributions is questionable. Third, Plaintiffs represent that many of the Class Members are high-income individuals in the financial services sector for whom a jury may have little sympathy given the current economic crisis facing our country. Therefore, Plaintiffs could face the  prospect that a jury would not sympathize with their case and thus either find no liability or severely limit any damages awarded to the Class. In addition, the trial of this case would surely require the extensive involvement of experts on ERISA, compensation and damages.  The acceptance of expert testimony by a jury is always far from certain. Further, divergent expert testimony leads inevitably to a "battle of the experts." See generally Rubenstein v. Republic. Nat'l Life Ins. Co., 74 F.R.D. 337, 345 (N.D. Tex. 1976).  Finally, even if the Class were to succeed at trial, Defendant would almost certainly appeal and continue to mount a zealous defense to the Class's claims. Accordingly, the significant risks and costs, when compared with the immediate benefits provided by the Settlement, favor approval of the Settlement.

      (v).    The Risks of Maintaining the Class Action Through Trial

Although the Court has preliminary found certification of the Class to be appropriate, there remains a risk that the Court would not find this action suitable for certification as a litigated class. Even if class certification were granted in the litigation context, class certification can always be reviewed or modified at any time before trial.  See, e.g., Prudential, 148 F.3d at 321 ("There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement."). Accordingly, this factor weighs in favor of settlement.

      (vi).    Defendant's Ability to Withstand a Greater Judgment and Reasonableness of Settlement in Light of Best Possible Recovery and All Attendant Risks of Litigation

17

The last three Girsh factors are the reasonableness of the settlement in light of: (a) Defendant's ability to withstand a greater judgment, (b) the best possible recovery, and (c) all the attendant risks of litigation.  The Court finds that each of these factors also supports approval of this Settlement and its significant financial and structural benefits. Although the Court has no reason to believe that Defendant could not withstand a judgment higher than the Settlement amount, the Third Circuit has noted that this factor alone does not weigh against settlement approval. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d at 538.  Additionally, the relief provided to the Class presents a significant achievement given the significant risks to the Class if the case were to proceed to trial, as discussed above.  In light of such risks, there is a strong indication that the Settlement represents the best possible recovery for the Class.  Therefore,  the Girsh factors militate strongly in favor of approving the proposed Settlement.

In light of the foregoing, it is clear that the proposed Settlement was reached after arms-length negotiations between experienced and capable counsel, and after significant discovery. See generally  In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535.  The reaction of the Class has been overwhelmingly favorable. None of the Girsh factors weigh against settlement.  Accordingly, the Court concludes that the settlement of $1,005,000.00 represents a reasonable and adequate result for the Class.

**C.    Fairness of Class Counsel's Attorneys' Fees**

Finally, Class Counsel seek an award of attorneys' fees and reimbursement of actual out-of-pocket expenses in the amount of up to $336,000.00.  This amount represents 32% of the settlement

amount.[5] See generally In re Cendant Corp. Litig., 264 F.3d 201, 256 (3d Cir. 2001) ("In common fund cases the fees paid to class counsel come directly out of the recovery of the class, as opposed to statutory fee-shifting cases where the plaintiffs' recovery and counsel's fees are distinct."). As a preliminary matter, the Court notes that it has received no objections from the Class on the issue of the proposed fee. See, e.g., Lenahan v. Sears, Roebuck and Co., 2006 WL 2085282, at *19 (D.N.J. July 24, 2006) ("The lack of significant objections from the Class supports the reasonableness of the fee request.").

Under the percentage-of-recovery approach, the Court must determine whether the percentage of total recovery that the proposal would allocate to attorneys fees is reasonable based on the circumstances of the case. See, e.g., Cendant Corp. Litig., 264 F.3d at 256.  In assessing the reasonableness of the fee award, the Court should primarily be guided by the following seven factors:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation;
> (5) the risk of nonpayment;
> (6) the amount of time devoted to the case by plaintiffs' counsel; and
> (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir. 2000).  Based on the reasons that follow, application of the Gunter factors fully supports the fees requested in this matter.

First, counsel has achieved a substantial recovery in the face of significant legal and factual obstacles.  Hundreds of people who participated in the Plans, who, in most instances, never expected

---

[5] Class Counsel requests $300,000.00 in attorneys' fees.  This amount represents 28% of the settlement amount.  Class Counsel requests an additional $36,000.00 in out-of-pocket expenses. This brings the total amount requested to 32% of the common fund.  See Tr. (March 3, 2009) at 8:2-12.

to recover any portion of their contributions, will be benefited by this Settlement.

In addition, the Notice of the Proposed Settlement sent to the Class Members specifically provided that Class Counsel would apply for an award of attorneys' fees of 33% of the Settlement. See Notice, ¶ 12. The Notice further advised Class Members that they could object to the Settlement and explained the procedure for doing so. To date, there have been no objections to the fee request.

Third, Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved. See, e.g., Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 548 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). It is clear, as demonstrated by the accompanying affidavits, that Class Counsel practices extensively in the highly complex field of class action litigation. It is also clear, based on the Court's own experience in managing this litigation, that Class Counsel has spent a considerable amount of time and resources in developing the background necessary to truly assess the strengths and weaknesses of Plaintiffs' case. By doing so, Class Counsel not only significantly benefited the Class, but also undertook a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their substantial out-of-pocket expenses. "Counsel's contingent fee risk is an important factor in determining the fee award." In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994). Class Counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise in numerous class actions. The risk of non-payment to Class Counsel, therefore, was great and clearly weighs in favor of the requested fee.

The requested fee is consistent with awards in similar cases. Although there is no general

20

rule, at least one court in this Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund.  See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) ("In common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered. One court has noted that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund.") (internal citations omitted). The fee requested in this case – which amounts to 32% of the settlement fund – falls within this range and is entirely consistent with fee awards for similar cases in this Circuit.  See, e.g., Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("Therefore, I conclude that an award of one-third of the settlement fund is reasonable in consideration of other courts' awards."); In re Valuevision Intern. Inc. Sec. Litig.,  957 F. Supp. 699, 700 (E.D. Pa. 1997) ("I am approving a fee award of approximately 34.27% of the net fund – a percentage which, in the circumstances of this case, does not seem exorbitant.").

Finally, the fee request is also supported by the Loadesar method.  See, e.g., In re Cendant Corp. Litig., 264 F.3d at 256 (recommending that district courts consider, in addition to the percentage-of-recovery approach, "a lodestar 'cross-check' ").  Plaintiffs' counsel lodestar is $1,223,071.75.  As reflected in the Cecchi Declaration, the hours recorded were incurred on the time spent investigating Plaintiffs' claims, preparing and filing the Complaint, briefing various motions, preparing for and attending various court conferences and arguments, document review and depositions, working with experts, and negotiating and finalizing the settlement. Plaintiffs' Counsels' rates vary appropriately between attorneys and paralegals, depending on the position, experience level and locale of the particular attorney.  Given the effort expended and the complexity of the legal and factual issues involved in this case, the hours incurred are entirely reasonable. The

lodestar crosscheck, therefore, supports Class Counsels' fee request.

The Court likewise finds that Plaintiffs' Counsels' request for reimbursement of $35,265.12 in actual out-of-pocket litigation expenses is appropriate given that such expenses have been adequately documented and are reasonable based on the circumstances of this case. See generally In re Safety Components, Inc. Sec. Litig., 166 F. Supp.2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir.1995)).

## CONCLUSION

Based on the reasons set forth above, the Court: (a) certifies the proposed Class for purposes of this settlement; (b) approves the Settlement Agreement; and (c) awards Class Counsel the attorneys' fees and costs requested.  An appropriate Order accompanies this Opinion.


DATE: March 31, 2009                    /s/ Mark Falk
                                        **MARK FALK**
                                        **United States Magistrate Judge**

22